UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

UNITED STATES OF AMERICA                                              Plaintiff

v.                                                   Criminal Action No. 3:19-cr-27-RGJ

SHAUNT GASAWAY                                                        Defendant

\* \* \* \* \*

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on Shaunt Gasaway's Motion in Limine [DE 49] and Motion to Suppress [DE 50]. The United States responded. [DE 52; DE 55]. This matter is ripe. For the reasons below, Gasaway's Motion in Limine [DE 49] will be **DENIED AS MOOT** and the Motion to Suppress [DE 50] will be **GRANTED**.

### I.   BACKGROUND

On October 10, 2018, Louisville Metro Police Department ("LMPD") officers were dispatched to a reported shooting at the College Court Apartments in Louisville, Kentucky. [DE 31 at 88-89; DE Investigative Letter 24-2 at 67]. Officer Corniel and other officers rendered aid, secured the crime scene, and waited for homicide detectives to arrive. [DE 31 at 89; DE 24-2 at 67]. At the time, there was no shooter in custody. [DE 31 at 121-122]. While waiting for the homicide detectives to complete their investigation, several officers noticed a group of bystanders screaming and running away from a male suspect, later identified as Shaunt Gasaway ("Gasaway"). [DE 31 at 90; DE 24-2 at 67].

Officer Corniel saw Gasaway approach the crime scene, holding a handgun and wearing plastic gloves. [DE 31 at 90, 101; DE 24-2 at 67]. Officer Corniel's partner yelled "gun," alerting the officers that an armed individual was approaching them. [DE 31 at 90]. Officers drew their

1

guns, commanding Gasaway to stop and drop the handgun. [*Id.*; DE 24-2 at 67]. Ignoring the officers' orders, Gasaway crouched near a bush, stood upright, and then "bladed his body away . . . concealing his body or maybe concealing something in his hand." [*Id.*; DE 24-2 at 67]. When Gasaway "raised back up," Officer Corniel could "no longer identify where" the handgun was located. [DE 31 at 96]. Unable to see the gun, Officer Corniel ran towards Gasaway. *Id*. Officer Corniel performed a "controlled takedown" and—because Gasaway "actively resisted" and refused to put his "hands behind his back"— dry stunned Gasaway with a taser. [DE 31 at 95-96].

Officer Corniel and Officer Coleman escorted Gasaway to Officer Corniel's police cruiser. While walking to the cruiser, Officer Corniel told Gasaway: "After I get all your information and find out who you are, I'm going to read you your rights. And then after I read you your rights, I'm going to ask you a couple of questions and obviously you can choose to answer them or not, ok." [Rotated Corniel_After take down to vehicle (hereafter, "Corniel 1"), 02:51-03:05]. Officer Coleman guarded Gasaway while Officer Corniel verified his information. [Coleman_walking def to and outside vehicle (hereafter "Coleman 1"), 01:50]. Gasaway sat on the hood of the cruiser, his hands handcuffed behind his back, a cigarette in his mouth. *Id.* at 01:40-01:48. When Officer Corniel walked away, Officer Coleman and Gasaway had the following conversation:

> Corniel: We'll talk when I get back. (Corniel walks away).
>
> Gasaway: Dude.
>
> Coleman: You know what happened tonight?
>
> Gasaway: Man, nah I don't know what happened tonight. I just know what . . .
>
> Coleman: You say this one? (Adjusting Gasaway's handcuffs).
>
> Gasaway: Yes. I just know what happened. I just know what happened to my orientation. What the fuck is this? I ain't ready say he . . . Dude pulled a gun out on me in the archway. Yes, sir.

2

Coleman: I'm going to lock it man, don't move.

Gasaway: Loosen up. I'm feeling threatened, ok? Simple as that . . .

Coleman: That's fine.

Gasaway: I know you ain't going to say . . . I actually did, man . . . I don't mean . . . you know, you all had to do what you had to do . . . put these extra charges on me . . . but, actually I did, man. Real talk, man.

Coleman: So what happened? I'm just curious.

Gasaway: I, I, I, bullshit . . . I don't know what happened with that incident . . .

Coleman: It didn't have nothing to do with your incident . . .

Gasaway: No, sir. I bullshit you not. It had nothing to do with my incident.

Coleman: I believe you.

Gasaway: Actually, I got a phone call…when somebody . . . a little friend of mine just left the house . . . he like was shit, you know . . . police is all out here . . . so I come out here.

Coleman: They told you we was out here? Why would you bring a gun out?

Gasaway: Huh.

Coleman: If they told you we was out here, why would you bring a gun?

Gasaway: I came out the first time . . . I came out the first time . . . when you all was putting him on the stretcher, taking him away.

Coleman: Ok.

Gasaway: And I go back in the house . . . so I come back out and my little girl like should we see what is going on . . . come back out . . . so as we going back in the house . . .

*Id.* 01:48-0:320

3

Before Gasaway could finish his statement to Officer Coleman, Officer Corniel returned and read him his *Miranda* rights. [Corniel 1, 05:27-5:48]. Gasaway waived his *Miranda* rights and then immediately had the following conversation with Officer Corniel:

> Corniel: My first question is: do you live here?
>
> Gasaway: Yes, sir.
>
> Corniel: Ok. What apartment do you live in?
>
> Gasaway: Uh, 28.
>
> Corniel: 28, ok. Um, do you know what took place tonight?
>
> Gasaway: No, sir.
>
> Corniel: Ok, so before you came outside with your weapon, you had no idea . . .
>
> Gasaway: Nah. Nah. I got a phone call. Like I just told [Coleman]. Pretty much somebody got shot through here.
>
> Corniel: Alright, so you did know what happened?
>
> Gasaway: Nah, when I came out, you was pretty much putting him on the stretcher.
>
> Coleman: So . . . he saying you knew . . .
>
> Corniel: You knew there was a shooting that occurred before you came out?
>
> Gasaway: Pretty much. After you all put him on a stretcher.
>
> Corniel: So what made you come outside with your weapon?
>
> Gasaway: I didn't come outside with my weapon. I didn't come out with a weapon.
>
> Corniel: So, you never possessed a firearm?
>
> Gasaway: Not right there. No, not actually.
>
> Corniel: Where did you possess a firearm at?

4

Gasaway: Man . . . this the part where . . . I hate . . . you know . . . I just want to speak to my lawyer. I didn't have a weapon on me at that time.

Corniel: But, you said not at that time . . . at what point in time tonight did you have a weapon on you?

Gasaway: Right now I'd like to speak to my lawyer.

Corniel: Ok, so you don't want to answer any more of my questions?

Gasaway: Nah . . . unless its off camera . . . you know. . . off record type shit . . . I can tell you the honest truth . . . but yeah . . . at that time I didn't have a weapon . . . I didn't come out with a weapon. Prior to the fact that somebody got shot over there . . . you know. Like I said I'd like to speak to my lawyer on the other tip . . . why you know, you all claimed I came out with a weapon . . . which I didn't . . .

Corniel: Ok.

Gasaway: Can I pick it up? Can I pick my cigarette up? I can pick it up.

Coleman: You want another one?

Gasaway: Sure, I guess so.

Corniel: So, you don't have any other statement you'd like to clarify for me or?

Gasaway: It wasn't me with the weapon.

Corniel: Ok. You don't have anything else you want to say about tonight or anything like that?

Gasaway: Like I said . . . I'm willing to talk to you . . . you know you writing down statements and all that . . . and all that other bullshit . . .

Corniel: You know I have to say that. Because I lose my job if I don't do that.

Gasaway: Well, I'm not talking to you then.

Corniel: Ok, that's totally fine.

Gasaway: I don't mind talking to you . . . if you have to report something. I want to talk to my lawyer.

Corniel: That's totally fine. You have that right.

*Id.* at 5:49-07:52.

At some point after Gasaway invoked his right to counsel and terminated the conversation with Officer Corniel, he allegedly re-initiated contact with Officer Coleman and "admitted to possessing the firearm seized near the scene of his arrest." [DE 50 at 211]. Officer Coleman turned his body camera off before Gasaway made this statement to him. *Id.*

A grand jury charged Gasaway in a single-count indictment with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). [DE 1]. Gasaway entered a plea of not guilty. [DE 13].

## II. STANDARD

"It is well settled that in seeking suppression of evidence the burden of proof is upon the defendant to display a violation of some constitutional or statutory right justifying suppression." *United States v. Rodriquez-Suazo*, 346 F.3d 637, 643 (6th Cir. 2003) (quoting *United States v. Feldman*, 606 F.2d 673, 679 n.11 (6th Cir. 1979). The Sixth Circuit has made clear that the burden of proof on the defendant requesting suppression extends to both "the burden of production and persuasion." *United States v. Chaar*, 137 F.3d 359, 363 (6th Cir. 1998); *United States v. Patel*, 579 F. App'x 449, 453 (6th Cir. 2014).

"No person shall be compelled in any criminal case to be a witness against himself." U.S. Const. Amend. V. In *Miranda v. Arizona*, the Supreme Court, in prescribing safeguards for the effectuation of the Fifth Amendment, held that "the prosecution may not use statements . . . stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." 384 U.S. 436, 444 (1966). The safeguards "prescribed by *Miranda* are to ensure that the police do not coerce or

trick captive suspects into confessing." *Berkemer v. McCarty*, 468 U.S. 420, 433 (1984). If a suspect is interrogated while in custody and he does not voluntarily, knowingly, and intelligently waive his Miranda rights, any statements he makes to the police must be suppressed. *Id*. at 429. A suspect is in custody if, under the totality of the circumstances, a reasonable person would not feel free to end the interrogation by the police and leave. *See Yarborough v. Alvarado*, 541 U.S. 652, 663 (2004). Police interrogation includes "not only. . . express questioning, but also . . . any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980).

### III. **DISCUSSION**

In his Motion in Limine, Gasaway moves the Court to "preclude the government from introducing during its case in chief, and/or on rebuttal, the body cam video, including a 'clip' of body cam video, of LMPD officer(s) advising Gasaway of his *Miranda* warnings, and conversations between the officer(s) and Gasaway following the reading of said *Miranda* warnings." [DE 49 at 205]. Gasaway contends this "clip" should be excluded because "the jury will infer from the giving of the *Miranda* warnings, and the terminating of the video that Gasaway invoked his right to remain silent and/or requested to speak with an attorney. This would be an unconstitutional inference under *Doyle v. Ohio*, 426 U.S. 610 (1976)." *Id.* at 205-206.

The United States disagrees, and asserts that the "clip" should not be excluded because it does not violate *Doyle v. Ohio*, is "probative," and does not "contain any mention of Gasaway invoking his constitutional rights." [DE 55 at 225-226].

In his Motion to Suppress, Gasaway moves the Court to "suppress all statements and evidence obtained, directly or indirectly, as a result" of his "unlawful arrest and interrogation."

7

[DE 50 at 208]. Gasaway contends that these statements should be excluded because: 1) the United States violated Fed. R. Crim. P. 16 by not timely disclosing the body-camera footage of Gasaway's unlawful interrogation and "[c]ompounding the error of the late notice of the video, the government provided notice of an interrogation, post *Miranda* of Gasaway, by a LMPD officer. The interrogation was not recorded"; and 2) Officers Coleman and Corniel violated Gasaway's *Miranda* rights by unlawfully obtaining his statements. *Id.* at 209.

In response, the United States argues that Gasaway's Motion to Suppress "should be denied as moot as the government" intends to use neither the pre-*Miranda* conversation between Gasaway and Coleman nor "the unrecorded oral admission made by Gasaway to Coleman that occurred after his recorded statements." [DE 52 at 217].

As discussed below, the Court finds that all of Gasaway's statements, including his statements on the "clip," were unlawfully obtained in violation of *Miranda*. Because the Court is suppressing his statements under *Miranda*, it need not consider whether to exclude them under the other grounds argued by Gasaway (*i.e.*, late disclosure and violation of *Doyle v. Ohio*).

**A. Gasaway's Pre-*Miranda* Statements to Officer Coleman**

An "interrogation" comprises "not only [ ] express questioning, but also any words or actions on the part of the police that the police know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis,* 446 U.S. 291, 301 (1980). *Miranda* rights are not required for questions "reasonably related to the police's administrative concerns," such as the defendant's name, address, height, weight, eye color, date of birth, and current address. *Pennsylvania v. Muniz,* 496 U.S. 582, 601 (1990); *United States v. Clark,* 982 F.2d 965, 968 (6th Cir. 1993) ("ordinarily . . . the routine gathering of biographical data for booking purposes should not constitute interrogation under *Miranda* "). Questions that are investigatory, however, require

8

the police to administer *Miranda* rights. *See United States v. Pacheco-Lopez*, 531 F.3d 420, 424 (6th Cir. 2008) (comparing case law and establishing the line between questions relating to the processing of an arrest that are biographical and questions of an investigatory nature).

Here, Officer Coleman's pre-*Miranda* questions and Gasaway's pre-*Miranda* answers cannot be described as merely biographical but were clearly part of the investigation. Asking Gasaway, "If they told you we was out here, why would you bring a gun?" [Coleman 1, 03:02-03:04], certainly was "reasonably likely to elicit an incriminating response," thus mandating a *Miranda* warning. *Innis,* 446 U.S. at 301. The officers asked Gasaway, who was handcuffed, to sit on the hood of a police cruiser. He was not free to leave. *See United States v. Newton*, 369 F.3d 659, 676 (2d Cir. 2004) ("Handcuffs are generally recognized as a hallmark of a formal arrest"); *see also New York v. Quarles*, 467 U.S. 649, 655 (1984) (handcuffed defendant was in custody for purposes of *Miranda*). Finally and perhaps most significantly, Officer Corniel told Gasaway and Officer Coleman that he was going to read Gasaway his *Miranda* rights after he got Gasaway's "information and [found] out who [he was]." [Corniel 1, 02:51-3:05]. Yet, despite Officer Corniel's clearly stated intention to delay the interrogation until Gasaway had been *Mirandized*, Officer Coleman began interrogating Gasaway as soon as Officer Corniel walked away. Because Officer Coleman did not administer the *Miranda* warning for these initial questions, the answers are "presumed compelled" and "excluded at trial in the State's case in chief." *Oregon v. Elstad,* 470 U.S. 298, 317 (1985).

**B. Gasaway's Post-*Miranda* Statements to Officer Corniel**

At issue is whether "it would be reasonable to find that in [this] circumstance[] the warnings could function 'effectively' as *Miranda* requires . . . [f]or unless the warnings could place a suspect who has just been interrogated in a position to make such an informed choice, there is

no practical justification for accepting the formal warnings as compliance with *Miranda*, or for treating the second stage of interrogation as distinct from the first, unwarned and inadmissible segment."[1]  *Missouri v. Seibert*, 542 U.S. 600, 611-612 (2004).

In *Seibert*, the Court addressed "*Miranda*-in-the-middle" when the police officers asked similar questions pre and post-warning. 542 U.S. 600, 615 (2004). A plurality of the Court set forth factors for courts to consider when determining whether *Miranda* rights delivered in the middle of an interrogation are effective: 1) "the completeness and detail of the questions and answers in the first round of interrogation"; 2) "the overlapping content of the two statements"; 3) "the timing and setting of the first and the second"; 4) "the continuity of police personnel"; and 5) "the degree to which the interrogator's questions treated the second round as continuous with the first." *Id*. If the results of the inquiry determine an effective warning then "a court can take up the standard issue of voluntary waiver and voluntary statement; if no [effective warning], the subsequent statement is inadmissible for want of adequate *Miranda* warning, because the earlier and later statements are realistically seen as parts of a single, unwarned sequence of questioning." *Id.* at 612, n. 4. The *Seibert* plurality held that the defendant's statements post-*Miranda* were inadmissible because the police did not inform the suspect that her statements pre-*Miranda* could not be used, there was little time between interrogations, and the questions post-*Miranda* were a

---

[1] Whether a "*Miranda*-in-the-middle" defendant ultimately invokes his right to remain silent or right to counsel is not relevant to the Court's *Seibert* analysis. *See United States v. Pacheco-Lopez*, 531 F.3d 420, 423 (6th Cir. 2008) (finding that the defendant's "Miranda-in-the-middle" statements should be suppressed, even though he terminated the interview with the police after having received his *Miranda* rights). In other words, *Miranda* rights can be ineffective under *Seibert* even if the "*Miranda*-in-the-middle" defendant terminates the interrogation after receiving them. In *Pacheco-Lopez*, the Sixth Circuit addressed this issue in dicta. *Id.* at 429 ("Equally important, looking at the defendant's decision to stop speaking . . . presents an issue that is not before us). Here, under the *Pacheco-Lopez* dicta, the *Miranda* warnings in this case were ineffective, even though Gasaway invoked his right to counsel, because they were "given literally in the middle of questioning, a situation that is likely to mislead and deprive a defendant of knowledge essential to his ability to understand the nature of his rights and the consequences of abandoning them." *Id.* (quoting *Seibert*, 542 U.S. at 613-614) (internal quotation marks omitted).

continuation of the questions asked before it was given. *Id.* at 616-617. As discussed below, all five *Seibert* factors support suppression of Gasaway's post-*Miranda* statements.

1. **The completeness and detail of the questions and answers in the first round of interrogation.**

The first *Seibert* factor is "the completeness and detail of the questions and answers in the first round of interrogation." 542 U.S. at 615. This factor favors suppression. Officer Coleman asked Gasaway "So what happened? I'm just curious"? before *Miranda*, leading Gasaway to describe his activities that night. The pre-*Miranda* questioning was not as detailed as in *Seibert*, but Officer Coleman asked the questions necessary to "make an arrest, tailor [his] post-*Miranda* interrogation, and secure a conviction." *United States v. Ray*, 690 F. App'x 366, 372 (6th Cir. 2017) (citing *United States v. Ashmore*, 609 F. App'x 306 (6th Cir. 2015)) (internal quotation marks omitted); *see also United States v. Pacheco-Lopez*, 531 F.3d 420, 422-28 (6th Cir. 2008) (finding first factor satisfied where initial questioning consisting of asking the defendant's name, where he lived, and how he arrived at a house involved with drug trafficking). Significantly, Officer Coleman asked Gasaway, who was later charged with possession of a handgun by a convicted felon, why he possessed a gun. [Coleman 1, 03:02-03:04 ("If they told you we was out here, why would you bring a gun?")]. This question is highly relevant to a felon-in-possession charge. *See United States v. Ashmore*, 609 F. App'x 306, 317 (6th Cir. 2015) ("As to the first factor, although the questioning was not as detailed as in *Seibert*, Agent Jenkins asked pre-*Miranda* the one compound question relevant to a felon-in-possession charge: is there a gun in the car and are your fingerprints on it?"). Gasaway began to answer Officer Coleman's question, but was interrupted by Officer Corniel, who had returned to read him his *Miranda* rights. Thus, Officer Coleman's questioning was "detailed and complete enough" to suggest the *Miranda* warning was ineffective. *Ray*, 690 F. App'x at 373.

## 2. The overlapping content of the two statements.

The second factor examines "the overlapping content" of the statements made by the defendant before and after the *Miranda* warning. *Seibert*, 542 U.S. at 615. This factor suggests the *Miranda* warning Gasaway received was ineffective. The substantial overlap between Gasaway's two statements is graphically represented in the following chart:

| | Question | | Answer | |
|---|---|---|---|---|
| | Pre-Miranda | Post-Miranda | Pre-Miranda | Post-Miranda |
| **Overlapping Content** | You know what happened tonight? | Um, do you know what took place tonight? | Man, nah I don't know what happened tonight. I just know what . . . | No, sir. |
| | So what happened? I'm just curious. | Ok, so before you came outside with your weapon, you had no idea . . . | I, I, I, bullshit. I don't know with that incident. No, sir. I bullshit you not. It had nothing to do with my incident. Actually, I got a phone call . . . when somebody . . . a little friend of mine just left the house . . . he like was shit, you know . . . police all out here . . . so I come out here. | Nah. Nah. I got a phone call. Like I just told [Coleman]. Pretty much somebody got shot through here. |
| | If they told you we was out here, why would you bring a gun? | You knew there was a shooting that occurred before you came out? So what made you come outside with your weapon? | I came out the first time. I came out the first time when you all was putting him on the stretcher, taking him away. | Pretty much. After you all put him on a stretcher. I didn't come outside with my weapon. I didn't come out with a weapon. |

## 3. The timing and setting of the first and second interrogations.

The third *Seibert* factor is "the timing and setting of the first and the second interrogations." 542 U.S. at 615. In *Pacheco-Lopez*, the interrogations occurred in the same place and the only break between them was to read the defendant his *Miranda* rights. 531 F.3d at 427. Thus, the court found the third factor favored suppression of the post-*Miranda* statements because "administration of the *Miranda* warning could not lead a suspect to a meaningful understanding that he could cease answering the questions at that point in time." *Id.* at 427.

The factual scenario here aligns closely with *Pacheco-Lopez*. Here, the only break in the interrogation was when Gasaway was given his *Miranda* rights, the interrogation was completed in the same setting (on the hood of the police cruiser), and the questions post-*Miranda* were continuous with the first. Gasaway's interrogation reflects the exact problem described by the Supreme Court in *Seibert*: "Unless the warnings could place a suspect who has just been interrogated in a position to make [ ] an *informed choice,* there is no practical justification for accepting the formal warnings as compliance with *Miranda,* or for treating the second stage of interrogation as distinct from the first, unwarned and inadmissible segment." 542 U.S. at 612 (emphasis added). There was no break in the questioning or any effort by the police officers to ensure that Gasaway understood that his prior statements could not be used against him; consequently, a suspect in Gasaway's situation would have viewed the two series of questions as part of a single interrogation. Thus, the third factor supports suppression.

### 4. The continuity of police personnel.

The fourth *Seibert* factor looks to "the continuity of police personnel." 542 U.S. at 615. Officer Coleman was present for the entirety of both interrogations. Officer Corniel was present for the post-*Miranda* interrogation, and was feet away in the police cruiser during the pre-*Miranda* interrogation; thus, this factor is supports suppression. *See Pacheco- Lopez*, 531 F.3d at 427.

### 5. The degree to which the interrogator's questions treated the second round as continuous with the first.

The last *Seibert* factor examines "the degree to which the interrogator's questions treated the second round as continuous with the first." 542 U.S. at 615. In *Pacheco-Lopez*, the Sixth Circuit ruled that when "there [is] no break in the questioning or any effort by the police to ensure that [a defendant] understood that his prior statements could not be used against him . . . we believe that any suspect in [the defendant's] situation would have viewed the two series of questions as

13

part of the one sequence." *Pacheco- Lopez*, 531 F.3d at 427-428. Like the defendant in *Pacheco-Lopez*, Gasaway was answering questions about why he possessed a gun when the interrogation was stopped, and he was *Mirandized* with no break in the interrogation. As a result, the two series of questions could be viewed as one sequence. Furthermore, while Gasaway voluntarily spoke with the police officers post-*Miranda*, at no point was it made clear that his statements before *Miranda* were inadmissible. Thus, this factor is satisfied.

In sum, the factors identified by the *Seibert* plurality all show that a reasonable person could not have seen the questions post-*Miranda* as a new and distinct experience. *Ray*, 690 Fed. App'x 366 at 377 (citing *Seibert*, 542 U.S. at 615). Consequently, the *Miranda* warning was ineffective, and Gasaway's statements, both pre-*Miranda* and post-*Miranda*, must be suppressed. Because Officer Corniel's *Miranda* warning was ineffective, Gasaway could not waive his *Miranda* rights and thus the Court need not determine whether his *Miranda* waiver was made knowingly, voluntarily, and intelligently. *See Seibert*, 542 U.S. at 612 n.4 (describing how a defendant cannot waive his *Miranda* rights if the underlying warning was ineffective).

**C. Gasaway's Post-*Miranda*, Unrecorded Statement to Officer Coleman**

The United States has agreed not to admit Gasaway's unrecorded statement to Officer Coleman in its case-in-chief or in rebuttal. [DE 52]. The Court will thus exclude this statement from admission at trial.

## IV. CONCLUSION

For the reasons set forth above, and being otherwise sufficiently advised, **IT IS ORDERED** as follows:

1. Gasaway's Motion in Limine [DE 49] is **DENIED AS MOOT.**

2. Gasaway's Motion to Suppress [DE 50] is **GRANTED.**

*Rebecca Grady Jennings, District Judge*
United States District Court

November 6, 2019